UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SCOTTSDALE INSURANCE COMPANY,

Plaintiff,

v.

FORD MOTOR COMPANY,

Defendant.

CASE NO. C10-373 MJP

ORDER DENYING SUMMARY JUDGMENT

This comes before the Court on Defendant's motion for partial summary judgment (Dkt. No. 36.) Having reviewed the motion, the response (Dkt. No. 38), the reply (Dkt. No. 39) and all related filings, the Court DENIES Defendant's motion for partial summary judgment.

**Background**

Plaintiff Scottsdale Insurance Company ("Scottsdale") is suing Defendant Ford Motor Company ("Ford") as a subrogee for Pacific Sheet Metal, Inc. ("PSM"). On January 7, 2009, a fire broke out inside PSM's Seattle warehouse, demolishing the warehouse and all equipment inside. (Dkt. No. 37, Fetters Decl., ¶ 2.) PSM submitted claims to its insurance company,

1 | Scottsdale, and purchased a new warehouse at a different location. (Dkt. No. 38-4, Zaknich
2 | Decl. at ¶ 5.) PSM decided re-building the warehouse at the original location was not feasible
3 | because scheduled work on an adjacent freeway would have prevented construction until 2013.
4 | (Id.) Scottsdale adjusted PSM's claim up to policy limits, covering: (1) the cost to rebuild the
5 | warehouse at a new location and (2) the cost to replace PSM's business personal property. (Dkt.
6 | No. 37, Ex. A at 7.)

Scottsdale now sues Ford for subrogation, alleging the fire was caused by a Ford 2004 F550 truck parked inside the warehouse. (Compl. at 7.) Specifically, Scottsdale claims Ford is liable for the $1.7 million paid for the new warehouse and the $2.25 million paid for the business personal property. Ford seeks partial summary judgment with respect to the proper method for calculating damages to PSM's warehouse and PSM's equipment. Ford believes a damage calculation should only consider the actual cash value of the warehouse and equipment lost and not the cost of replacement.

**Discussion**

1. Summary Judgment

    a. Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there are no genuine issues of material fact for trial and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The underlying facts are viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party moving

for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish the existence of an issue of fact regarding an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

   b. Measure of Damages

     i. Warehouse

Ford argues Scottsdale's recovery should be limited to the actual cash value because PSM's warehouse was rebuilt at a new location. The Court disagrees.

In Washington, a jury may consider replacement costs when calculating damages to a plaintiff's destroyed real property. Thompson v. King Feed & Nutrition Service, Inc., 153 Wn.2d 447, 454 (2005). In King Feed, the Washington Supreme Court affirmed a trial court's instruction to the jury allowing them to consider replacement costs when calculating damages to a plaintiff's barn. 153 Wn.2d 447, 454 (2005). Specifically, the trial court allowed the jury to consider replacement costs if they found "the cost of replacing the barn, although it may be greater than the value added to the property by the barn, was not unreasonably disproportionate to the diminution in market value of the property because of the loss of the barn" and either:

 (a) there was reason personal to the owner for replacing the barn or

 (b) there was reason to believe that the plaintiff will replace the barn to its original
   condition.

King Feed, 153 Wn.2d at 454.

The parties do not dispute PSM's warehouse was destroyed and had no market value after the fire; however, Defendant believes replacement costs are unavailable because PSM did not restore the building "to its original condition." Defendant's argument fails for three reasons. First, the jury instruction affirmed in King Feed was two-pronged. Regardless of whether the barn was replaced to its original condition, a jury could consider replacement costs under the first prong—i.e., if there was reason personal to the owner for replacing the barn. PSM needed to replace its property quickly in order to continue doing business. A jury may believe this was a reason personal to the owner for replacing the building and consider replacement costs as long as it is not "unreasonably disproportionate." This, of course, does not bar Ford from arguing at trial that the replacement costs Scottsdale seeks were unreasonably disproportionate to the diminution in market value.

Second, King Feed did not impose any requirement that a destroyed building be rebuilt at the same location in order for a plaintiff to seek replacement costs. The King Feed court was concerned with the appropriate jury instruction when a building is destroyed as opposed to damaged. Id. The King Feed court was not deciding whether the replacement barn should be re-built on the same location. Therefore, Defendant's argument that the King Feed court's use of the term "replacement" actually meant "restoration of a pre-existing building to its pre-loss condition on the same property on which the loss occurred" is weak. (Def's Reply Br. at 3.)

Third, none of the cases Defendant relies on require a building be replaced at the same location for replacement costs to inure. In Burr v. Clark, the Washington Supreme Court defined replacement costs in a single paragraph as both "the cost of repairing or restoring the same [property]" and "the cost of restoring or replacing such property." 30 Wash.2d 149, 158 (1948). In using the terms repairing, restoring, and replacing interchangeably, Burr does not consider

whether restoration or replacement must be done on the same property, and, to an extent, suggests replacement costs may be either the cost of restoration and/or replacement. Likewise, while Defendant observes Olson v. King County, 71 Wash.2d 279 (1967) and Pugel v. Monheimer, 83 Wn.App. 688 (1996) use the term "restoration costs," neither case involved a situation where a property was rebuilt at a different location.

Since Defendant cites no case holding replacement costs are limited to the cost of restoration on the same plot of land, the Court DENIES Ford's motion for summary judgment as to the replacement costs of the warehouse.

    ii. <u>Business Personal Property</u>

Ford argues the destroyed personal property had market value and, therefore, Scottsdale's recovery should be limited to its actual cash value. Again, the Court disagrees.

In Washington, the recovery standard for destruction of personal property is as follows: (1) the measure of damages for destroyed personal property that may have had market value is the market value; (2) if the destroyed property has no market value but can be replaced or reproduced, then the measure is the cost of replacement or reproduction; (3) if the destroyed property has no market value and cannot be replaced or reproduced, then the value to the owner is the proper measure of damages. Mieske v. Bartell Drug Co., 92 Wash.2d 40, 43-44 (1979).

As the moving party, Ford bears the burden of showing an absence of a factual dispute with respect to the measure of damages. However, Scottsdale is the party that must ultimately prove damages at trial. Therefore, the burden is shifted if Ford simply points out through argument—the absence of evidence to support Scottsdale's claim. See Deveraux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2011).

whether restoration or replacement must be done on the same property, and, to an extent, suggests replacement costs may be either the cost of restoration and/or replacement. Likewise, while Defendant observes Olson v. King County, 71 Wash.2d 279 (1967) and Pugel v. Monheimer, 83 Wn.App. 688 (1996) use the term "restoration costs," neither case involved a situation where a property was rebuilt at a different location.

Since Defendant cites no case holding replacement costs are limited to the cost of restoration on the same plot of land, the Court DENIES Ford's motion for summary judgment as to the replacement costs of the warehouse.

    ii. <u>Business Personal Property</u>

Ford argues the destroyed personal property had market value and, therefore, Scottsdale's recovery should be limited to its actual cash value. Again, the Court disagrees.

In Washington, the recovery standard for destruction of personal property is as follows: (1) the measure of damages for destroyed personal property that may have had market value is the market value; (2) if the destroyed property has no market value but can be replaced or reproduced, then the measure is the cost of replacement or reproduction; (3) if the destroyed property has no market value and cannot be replaced or reproduced, then the value to the owner is the proper measure of damages. Mieske v. Bartell Drug Co., 92 Wash.2d 40, 43-44 (1979).

As the moving party, Ford bears the burden of showing an absence of a factual dispute with respect to the measure of damages. However, Scottsdale is the party that must ultimately prove damages at trial. Therefore, the burden is shifted if Ford simply points out through argument—the absence of evidence to support Scottsdale's claim. See Deveraux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2011).

1      Here, Ford argues Scottsdale's recovery is limited to market value because the destroyed
2 property had market value. With the burden shifted, Scottsdale submits a declaration from the
3 owner of PSM regarding the difficulty PSM faced in replacing the damaged equipment and
4 determining the age of the equipment. (Dkt. No. 38-4, Zacknich Decl. ¶ 12.) At the least, the
5 declaration suggests there may not have been a buyer on the open market who would have
6 purchased equipment whose age is indeterminable. Scottsdale has met its burden at the
7 summary judgment stage of showing the destroyed property lacked market value and the
8 measure of damages may be the cost of replacement.
9      Since Scottsdale's measure of damages for business personal property is not limited to
10 actual cash value, the Court DENIES Ford's motion for summary judgment as to the replacement
11 costs of the business personal property.
12    2. Motion to Strike
13     Scottsdale seeks to strike Ford's submission of documents prepared by Scottsdale's
14 damages consultants and experts for lack of foundation, inadmissible hearsay, and improperly
15 submitted opinion testimony. The Court agrees.
16     Ford's documents appear to be offered as corroboration for Ford's own calculations.
17 While Ford contends the documents were merely meant to establish Scottsdale's intent to pursue
18 replacement cost damages at trial, the Court finds this reason is weak. If the issue of damages
19 calculations were a matter of law, as Ford argues, there is no reason to submit the expert reports.
20 Because they lack foundation and are introduced to prove the truth of the matter asserted, the
21 Court STRIKES the report by the Appraisal Group of the Northwest LLP, the report and
22 spreadsheet from Adjusters International's "Partial Claim Submission," the emails between Rob
23
24

Powers and John Colvard, and the emails between Scottsdale personnel and Scottsdale's outside adjuster. (Dkt. No. 37, Fetters Decl. ¶¶ 2, 4-8.)

**Conclusion**

The Court DENIES Ford's motion for partial summary judgment. Ford fails to demonstrate an injured party must replace destroyed property at the same location. In addition, a factual dispute remains as to whether the business personal property lacked market value. The Court also STRIKES Ford's submission of documents prepared by Scottsdale's damages consultants.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 7th day of June, 2011.

Marsha J. Pechman
United States District Judge